**De Kalb Trust and Savings Bank et al., Appellees, v. De Paul Educational Aid Society et al., Appellants. De Paul University et al., Defendants.**

**Gen. No. 37,763.**

Opinion filed December 19, 1934.

CHAPMAN & CUTLER, of Chicago, for appellants A. C. Allyn & Co., Inc. and John C. Meiners.

MOSES, KENNEDY, STEIN & BACHRACH, of Chicago, for appellant De Paul Educational Aid Society; PERRY M. CHADWICK, JULIUS MOSES and RALPH F. HUCK, all of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellees; MEYER ABRAMS, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

On June 11, 1934, plaintiffs filed a bill of complaint in the superior court of Cook county against De Paul Educational Aid Society, De Paul University, First National Bank of Chicago, A. C. Allyn & Company and John C. Meiners, the last named individually and as chairman of a bondholders' protective committee. Certain other persons who are not parties to this appeal were also made defendants.

The bill alleges in substance that prior to July 1, 1927, De Paul University adopted a plan for the erection of a building in the downtown district of Chicago, and in order to obtain funds for such project, devised a plan to issue and sell bonds in sufficient amount to provide funds for the construction of this building, and in furtherance of the plan, to organize a separate corporation for the purpose of executing and disposing of such bonds; that in pursuance of this plan, the De Paul University on January 12, 1927, caused to be formed and chartered a corporation, not for profit, known as the De Paul Educational Aid Society, the purpose of which was "to promote and advance the education of men and women"; that prior to the procurement of the charter of the De Paul Educational Aid Society, this society on July 1, 1927, caused a trust deed to be executed by the terms of which this society conveyed to the First Trust and Savings Bank of Chicago certain leases on lands in Chicago; that the society covenanted in this trust deed that it was lawfully possessed of this leased property. It is further

alleged that it is provided in this trust deed that upon default in the payment of principal and interest, or both, and such default should continue for 60 days, that the trustee might on the request of not less than 25 per cent of the principal amount of the bonds then outstanding, declare the principal of all the bonds to be due, and might institute foreclosure proceedings, and that the right of such action was vested exclusively in the trustee, and that in addition to such remedy, the trustee might enter into the possession of the properties for the purpose of conserving the income therefrom; that the trust deed was executed before the De Paul Educational Aid Society had acquired title to these properties, and that a representation made in the trust deed that at the time of its execution the society was the owner of such properties, was false; that A. C. Allyn & Company, bankers, floated the bond issue in order to realize commissions amounting to $100,000; that A. C. Allyn & Company caused to be distributed a circular stating in substance that De Paul University, for whose benefit the society was organized, was headed by influential persons who controlled the society and were behind the project; that the leasehold was valued at $392,000, and that the value of the building to be erected on the premises was estimated to be of the value of $2,778,175, and the total first mortgage bond issue represents slightly less than 56 per cent of the appraised fair market value of the leased property and the building, when completed; that it was estimated that the net income from the properties would amount to the sum of $188,377 per annum, and that a sinking fund was to be established to pay the current interest requirements, the balance to be devoted to the retirement of bonds, and that the title to the mortgaged premises would be guaranteed by the Chicago Title & Trust Company, but that the statements above referred to

were not guaranteed. It is alleged that plaintiffs, De Kalb Trust and Savings Bank and Eleanor C. Gochenour, relying upon these representations, which were misleading, purchased certain bonds issued by the Aid Society, believing such bonds to be bona fide, and that the bondholders were fully protected and safeguarded, but that it is now discovered that the bonds were illegally issued, and that the officers, directors and trustees of the Aid Society were not authorized by law to execute the trust deed given by the society to secure the payment of these bonds, and that the Aid Society was not authorized by law to purchase the leaseholds so mortgaged; that the organization of this society was brought about for the sole purpose of obtaining funds, and at the same time relieve the promoters of the plan of any personal liability, and that in violation of law, the promoters caused the bonds to be placed on the market and that thereby plaintiffs and others were defrauded, and that the trustee is liable with the other defendants; that in anticipation of a default in the payment of the bonds issued, A. C. Allyn & Company formed a bondholders' protective committee of three employees of A. C. Allyn & Company, and that such committee entered into an agreement between themselves in accordance with the plans of the promoters of the scheme, by which the bondholders were to be induced to place their bonds in the hands of this committee; that further and in anticipation of a default in the payment of the bonds, and for the purpose of depriving the bondholders of their rights in the premises, A. C. Allyn & Company and the trustee induced the bondholders' committee to cause a letter to be mailed to such bondholders, urging them to deposit their bonds with the committee, and to sign an agreement concerning the disposition of such bonds; that Eleanor C. Gochenour, after depositing her bonds with such committee and signing such agree-

ment, and being at such time unadvised as to its contents and import, subsequently learned that it is provided in this agreement that the members of the committee should be reimbursed for any expenses and disbursements made in and about their efforts to protect the bond issue; that if she had been advised as to any such agreement, she would not have given her bonds to this committee; that misrepresentations have been made by the committee to the bondholders as to the rents and incomes of the property involved; that default has been made by the society in the payment of its ground rent; that no deposits have been made, as agreed, by the society to create a sinking fund for the payment of principal and interest of the bonds as the same become due; that the society is insolvent, and that it has been notified by the owners of the leased lands that the leases will be forfeited unless the rent is paid, and that because of these conditions, unless a receiver is appointed to conserve the property, the money invested in the bonds will be lost. The bill recites that it is brought for the benefit and on behalf of the plaintiffs and all of the bondholders, and they ask that a receiver be appointed for the De Paul Educational Society, that the society be dissolved, and the trustee under the trust deed removed; that the bondholders' committee be restrained from using any of the bonds for any of the alleged purposes for which they were deposited, and that the committee be ordered to return all the bonds held by it to the true owners. Plaintiffs also seek to have an accounting taken, to have the defendants made jointly and severally liable for the difference between the value of the building at the time the bond issue was floated and the present value, and that a new trustee, when appointed, be authorized to bid the property in at any sale.

On June 13, 1934, a motion was presented to the court for the appointment of a receiver for the property, and on that day the court continued such motion until July 13, 1934. Between June 13 and July 13, 1934, answers were filed by the defendants, De Paul University and De Paul Educational Aid Society, and motions were made by A. C. Allyn & Company and John A. Meiners that the complaint be made more definite and certain. On July 12, 1934, the De Paul Educational Aid Society filed a petition in the District Court of the United States for the Northern District of Illinois seeking a reorganization of the institution under sections 77-A and 77-B of the National Bankruptcy Act. On July 13, 1934, the superior court of Cook county, upon a hearing, participated in by all the parties, entered an order, of which the following is a part:

"It is therefore ordered, adjudged and decreed that Oscar Weiner and J. A. Stephens be and are hereby appointed Receivers of the De Paul Educational Aid Society and of all of its property, things and effects, including the real estate described in the Bill of Complaint, located at 64-68 East Lake Street, Chicago, Illinois, and all parties are hereby required to attorn to the Receiver and to turn over all property of every kind, nature and description belonging to the said De Paul Educational Aid Society. . . .

"It is further ordered that all parties, their agents, solicitors and attorneys, be and are hereby enjoined and restrained from further proceeding with any plans of reorganization or with any other proceedings in any other court, either at law or in equity, directly or indirectly, and from using any of the lists of the bond owners for the purposes of reorganization, and from soliciting the bond owners to carry out any reorganization plan under the alleged Depositary Agreement until the further order of the court."

The receiver appointed by this order is required to give a bond in the sum of $50,000. Two separate interlocutory appeals were taken from this order,—one by the De Paul Educational Aid Society from the entire order, by which appeal this defendant prays that this court reverse, vacate and set aside the order of July 13, 1934, that the receiver appointed be discharged, that the society be restored to the possession of the property, and that the court vacate and dissolve the injunction. This appeal is numbered 37,763. A. C. Allyn & Company and John C. Meiners appeal from the injunction order, and this appeal is numbered 37,764. The causes have been consolidated in this court, and but one set of abstracts and briefs has been filed. On September 29, 1934, after defendants' brief had been filed, plaintiffs entered a motion to dismiss the appeal as to the order granting the temporary injunction, which motion has been reserved to the hearing.

It may be noted that the effect of the order entered by the court below is to enjoin defendant, De Paul Educational Aid Society, from proceeding further in the federal court in the matter of the petition in bankruptcy filed there, and defendants contend that the State court cannot enjoin one from the exercise of any rights granted by the Constitution of the United States and the Bankruptcy Act, and that the State court is without power to pass upon the question as to whether the federal court has or has not complete jurisdiction of the matters now pending before it.

In *Morgan v. State,* 154 Ark. 273, a bill was filed against a corporation and its officers by a stockholder on behalf of all the creditors and stockholders of the corporation, and it was alleged that the corporation was being mismanaged and was insolvent. The bill prayed for an accounting, for the appointment of a receiver, and that the corporation be dissolved. In

that case the court issued an injunction restraining the officers and directors from controlling, or attempting to control, the affairs of the corporation or its assets, and from calling or holding a directors' or stockholders' meeting. On the date of the issuance of the injunction, the directors held a meeting and ordered that a voluntary petition in bankruptcy be filed, which was accordingly done shortly thereafter. The directors were cited for contempt of court by the State court, and were adjudged guilty. On appeal to the Supreme Court of Arkansas, in an order quashing the decree adjudging defendants guilty of contempt, the court said:

"Art. 1, sec. 8, of the Constitution of the United States provides that Congress shall have power to pass uniform laws on the subject of bankruptcies throughout the United States. Congress has exercised this power and enacted a general bankrupt law for the United States, and business corporations like the Consumers Ice & Coal Company may become voluntary bankrupts under its provisions. See Barnes' Federal Code, 1919, sec. 9089. . . .

"The Attorney General relies upon the case of *In re Associated Oil Co., Inc.,* 271 Fed. 788. In that case it was held that after a receiver has been appointed for a corporation by a State court, under authority of the laws of the State, with power to take possession of and hold the property of the corporation, its directors are without power to authorize the filing of a petition in voluntary bankruptcy and the surrender of its property to the bankruptcy court.

"It is true that in that case, as in the present one, the petition in bankruptcy was filed pursuant to a resolution of the board of directors of the corporation, declaring that the affairs of the corporation were in a precarious state, owing to the pendency of a suit in the State court for a receiver; but there the analogy

ends. The State court in that case did not enjoin the directors from filing a petition in bankruptcy and did not attempt to punish them for contempt in so doing. The receiver appointed by the State court appeared in the bankruptcy court and contested the right of the directors to file a voluntary petition in bankruptcy. The bankruptcy court was of the opinion that the appointment of a receiver by the State court took the control of the assets out of the corporation, so that there was nothing to surrender to a trustee in bankruptcy. Furthermore, in the exercise of discretion the bankruptcy court declined to interfere with the State court in the matter. The reasoning was that to allow an adjudication in bankruptcy would undo all that had been accomplished in the State court to prevent the mismanagement of the affairs of the corporation.

"This was a decision of the federal bankruptcy court which has, as we have already seen, exclusive jurisdiction in bankruptcy matters. It is one thing for a bankruptcy court to declare under what circumstances it will exercise its discretion in matters relating to the bankruptcy law and quite a different thing to say that this discretion may be exercised by State courts. To hold that State courts have any jurisdiction to adjudicate under what circumstances a person or corporation entitled to the benefit of the bankrupt laws may file a voluntary petition in bankruptcy would be to oust the federal bankruptcy courts of that exclusive jurisdiction vested in them by the Constitution of the United States and declared by the Supreme Court of the United States.

"To say that a State court may enjoin a person from filing a petition in bankruptcy for any reason is to that extent to take away the exclusive jurisdiction of the bankruptcy court in the matter. In other words, it was a question for the Federal court in bankruptcy

and not for the chancery court to declare under what circumstances the corporation was entitled to be adjudged a bankrupt, or whether it was entitled at all to be declared a bankrupt.''

Defendants further contend that there is no cause of action stated in the bill which entitled plaintiffs to any of the relief prayed, in so far as the petition asks for the appointment of a receiver, the dissolution of the corporation, and the other relief therein demanded. We call attention to the fact that this is an interlocutory appeal, and not an appeal from a final order. No demurrer was filed to the bill, and the order was entered after a hearing, with all the parties in court.

In *McDougall Co. v. Woods*, 247 Ill. App. 170, this court said:

''The statute permitting appeals from interlocutory orders was not intended primarily to provide for a review by this court of the rulings of the trial court on demurrers or to secure from this court its judgment on demurrers before the trial court has ruled thereon. A bill, when first filed, is frequently demurrable, especially bills for injunctions which are usually hurriedly prepared, but which may be made good by proper amendments which the first court has power to allow. We have no such power. The primary purpose of the statute is to permit a review of the exercise of the discretion lodged in the chancellor with the purpose of determining whether the interlocutory order probably was necessary to maintain the *status quo* and preserve the equitable rights of the parties.

''We do not feel called upon to pass upon the demurrability of the bill or the merits of the cause. It is enough to say at present that the bill presents circumstances which lead to a belief that probably the plaintiff will be entitled to relief. The essence of the bill is the averment of a fiduciary relationship between

the parties, in which defendant in the matter of collections made by him was the agent of complainant, having under his control the only books showing such collections and the accounts. There was no impropriety in temporarily enjoining the defendant from collecting or receiving any monies which equitably belonged to the complainant and from using any of said funds for his own use. The receiver is not a general receivership, but is given the power only to collect and receive all funds belonging to the complainant and to discover assets belonging to it.''

However, as to that portion of the injunction order which restrains the De Paul Educational Aid Society from proceeding further in the federal court with the bankruptcy petition filed there, this court is of the opinion that the court was without power to enter such order, but that any questions as to the jurisdiction and power of the federal court in bankruptcy matters are to be determined by that court. In so far as the other relief granted is concerned, this court is of the opinion that on this appeal, we will not interfere with the order appealed from. Therefore, the order here is that the motion to dismiss the appeal from the injunction order be denied, and that the cause be reversed and remanded with the direction that the order appealed from be modified in accordance with this opinion. In all other respects, the order of the superior court is affirmed.

*Reversed and remanded with directions.*

HEBEL, P. J., and WILSON, J., concur.